**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank Gunnar WILLIAMS,**
**Defendant-Appellant.**

No. 78–5413.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1979.

Warren G. Jacobs, Miami, Fla., for defendant-appellant.

David A. Bagwell, Mobile, Ala., amicus curiae.

Wm. A. Kimbrough, Jr., U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a search on the high seas case. The defendant, Frank Gunnar Williams, was found guilty after a bench trial of conspiracy to import marijuana in violation of 21 U.S.C. § 963. He brings this appeal urging (1) that the United States Coast Guard lacked authority to board and search a foreign vessel on the high seas, (2) that the district court lacked personal jurisdiction because his presence at trial was a product of an illegal arrest, (3) that venue was improper in the Southern District of Alabama, (4) that the district court lacked jurisdiction to try him because no overt act occurred within the territorial jurisdiction of the district court, and (5) that the Coast Guard's search of the vessel violated the fourth amendment. Because Williams' first two contentions are disposed of by *United States v. Cadena,* 585 F.2d 1252, 1256, 1259 (5 Cir. 1978), we need not review these points. Upon consideration of his remaining points, we affirm.

*Facts*

On January 25, 1978, John Stevenson, a Drug Enforcement Administration (DEA)

pilot was flying a mission off the coast of Colombia attempting to locate drug trafficking vessels. About one and one-half miles off the Colombian coast, Stevenson spotted a vessel that he identified as the PIGH rendezvousing with several smaller vessels. Stevenson reported his find to the DEA intelligence center in El Paso, Texas.

On January 30, 1978, the United States Coast Guard Cutter ACUSHNET spotted the M/V PHGH in international waters. The captain of the ACUSHNET had on board a list of vessels suspected of being involved in international drug traffic. On this list was the vessel M/V PIGH. The sighted vessel matched the description of the PIGH, and after a check with the DEA intelligence center, the captain determined that the PIGH and the PHGH were the same vessel. As the ACUSHNET closed in on the PHGH, the PHGH hoisted two black diamonds, a signal indicating a problem on board. Radio communications between the ACUSHNET and the PHGH followed and the PHGH reported that she had a generator problem but did not need any assistance. The PHGH also reported that her cargo was sulphur and that she was enroute to Mobile, Alabama. The PHGH was not flying the flag of her registry but the stern of the ship reported a Panamanian registration.

The ACUSHNET remained in visual contact with the PHGH, and on the third day,

crew members of the PHGH began waving clothes, toilet paper, and flashlights. These gestures continued for six hours and culminated with a crew member from the PHGH jumping into the water and swimming to the ACUSHNET. The crew member reported that there "was dirty business on board the ship." During this time the PHGH had stopped forward progress and was dead in the water.

■ On February 2, 1978, the ACUSHNET commander received authority from the Panamanian Embassy via the United States State Department to board the PHGH.[1] The Coast Guard boarded the PHGH and a search of the ship's hold revealed 21,680 pounds of marijuana. Although there is some doubt, we will give Williams the benefit of the doubt and assume that he was a bona fide crew member and not a mere passenger.

## I. Venue

■ Since Williams' offense, conspiracy to import marijuana, was committed on the high seas, venue is proper in the Southern District of Alabama under the plain language of 18 U.S.C. § 3238.[2] Williams argues that since one overt act in furtherance of the conspiracy was committed in New York, venue is proper in New York under 18 U.S.C. § 3237(a).[3] Even though venue

---

**1.** The Convention on the High Seas, 450 U.N. T.S. 82, 13 UST 2312, T.I.A.S. No. 5200, is a codification of international law, and a treaty that purports to be binding upon all signatories. It prohibits the boarding of a foreign merchant ship on the high seas by a warship unless there are reasonable grounds for suspecting that the ship is engaged in piracy, slave trade, or, although flying a foreign flag or refusing to show its flag, is of the same nationality as the warship. Article 22, Convention on the High Seas.

As in *United States v. Cadena*, 585 F.2d 1252, 1260 (5 Cir. 1978), Panama is not a signatory to this convention. But even if Panama were a party to this convention, we believe that Panama's specific approval of the boarding would divest those on board of any protection under the Treaty. We do not think that the Convention was meant to protect the privacy of those on board but rather the Treaty is a means to protect the national interest implicit in freedom

of the seas—an interest that the United States has held dear throughout its history.

**2.** 18 U.S.C. § 3238. Offenses not committed in any district

The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

**3.** 18 U.S.C. § 3237. Offenses begun in one district and completed in another

may be appropriate in New York, *see Rivard v. United States,* 375 F.2d 882, 888 (5 Cir. 1967); *Miller v. Connally,* 354 F.2d 206 (5 Cir. 1965), Williams' unspoken and erroneous premise is that if venue is proper under 18 U.S.C. § 3237(a), venue cannot be proper under § 3238. The venue statutes are not mutually exclusive, and a suggestion that venue is proper under § 3237(a) will not serve to divest venue from another judicial district if venue is proper in that district under § 3238.

## II. Jurisdiction of the District Court

■ Williams argues that the district court lacked jurisdiction over the crime because no overt act occurred within the territorial jurisdiction of the district court.[4] Williams places great reliance on the following language in *United States v. Winter,* 509 F.2d 975, 982 (5 Cir. 1975):

> The case law clearly establishes that the District Court has jurisdiction over a conspiracy and all those proved to be conspirators if the conspiracy is designed to have criminal effects within the United States and if there is sufficient proof that at least one of the conspirators committed an overt act in furtherance of the conspiracy within the territorial jurisdiction of the District Court.

While this language would seem to serve Williams well, the *Winter* court added:

> The indictment in the instant case was brought under 21 U.S.C. § 963 the "built-in" conspiracy provision of the Controlled Substance Import and Export Act, which, unlike 18 U.S.C.A. § 371, does not *explicitly* require proof of an overt act.
>
> . . . ., we need not resolve the question of whether proof of an overt act is re-

quired under § 963 either as a matter of criminal law or for jurisdictional purposes since the indictment in the instant case contains such an allegation.

509 F.2d at 983 n.25.

Therefore, it appears that the question reserved by *Winter* is ripe in the instant case. Since this indictment was brought under 18 U.S.C. § 963 and we have held that this provision does not require proof of an overt act, *United States v. Thomas,* 567 F.2d 638, 641 (5 Cir. 1978); *United States v. Palacios,* 556 F.2d 1359, 1364 (5 Cir. 1977), we hold that proof of an overt act within the judicial district is not a prerequisite for district court jurisdiction. Any other result would have the anomalous requirement that more be shown for jurisdiction than is necessary for conviction of the crime.

## III. Fourth Amendment Issue

During the oral argument of this case, the question of "standing" was raised for the first time. It is clear that under prior Fifth Circuit precedent, Williams has "standing" to contest the search. *United States v. Edwards,* 577 F.2d 883, 892 (5 Cir. 1978) (en banc). However, it has become apparent that the Supreme Court has rejected our view of "standing"[5] and has adopted the position that the traditional standing notions "are more properly subsumed under substantive Fourth Amendment doctrine." *Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). Under this inquiry we are to determine "whether the disputed search and seizure has infringed an interest which the Fourth Amendment was designed to protect." *Id.* 99 S.Ct. at 429.

---

(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prose-

cuted in any district from, through, or into which such commerce or mail matter moves.

4. Williams admits that the conspiracy was designed to have effects within the territorial jurisdiction of the United States.

5. Mr. Justice White specifically noted this in his dissent. *See Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 425 n.3, 58 L.Ed.2d 387 (1978) (White, J., dissenting).

**214**

A. Contest to the stop

 *Rakas* did not deal with the question of standing to contest an unconstitutional stop. *See* dissent of Mr. Justice White, —— U.S. ——, 99 S.Ct. 421, 426 n.5, 58 L.Ed.2d 387. If a stop is unconstitutional, evidence found as a fruit of the unconstitutional stop may be excluded from evidence. *United States v. Martinez-Fuerte,* 428 U.S. 543, 556, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *United States v. Cruz,* 581 F.2d 535 (5 Cir. 1978) (en banc). However, before the government may order a foreign vessel to stop, we hold that reasonable suspicion that criminal activity may be afloat must be shown. *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *United States v. McLeroy,* 584 F.2d 746 (5 Cir. 1978); *United States v. Hall,* 557 F.2d 1114 (5 Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 194 (1977).

We hold that this standard is amply met here. The vessel was seen hovering off the coast of Colombia with support boats nearby. Crew members beckoned the Coast Guard Cutter for over six hours and one crew member was moved to jump overboard and swim to the Cutter. And finally, in a business in which time is money, the merchant vessel remained dead in the water and rejected offers of assistance. A reasonable person would have been suspicious of the activity on board the PHGH. We therefore hold that the Coast Guard was justified in stopping the vessel to conduct an investigatory stop.

B. Contest to the search

The members of the Coast Guard boarding party discovered 21,680 pounds of marijuana in the hold of the vessel. We hold that Williams has no legitimate expectation of privacy in the hold of a merchant vessel. The cargo of a merchant vessel is subject to inspection when it leaves a port and when it returns to a port. Certainly, no crew member could assert a privacy interest in a cargo area subject to these inspections. In the instant case, we are not dealing with a search of a living quarters but rather with a search of an area that is let for public hire. It is therefore plain to us that under the analysis approved by the Supreme Court in *Rakas,* as a matter of substantive fourth amendment law, the search of the vessel's hold did not violate any of Williams' rights.

AFFIRMED.