**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Richard Q. FELTS and Christopher Havens, Defendants-Appellants.**

**Nos. 79–1036, 79–1092.**

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1979.

Decided July 30, 1979.

Rehearing Denied Sept. 4, 1979.

---

R. Davy Eaglesfield, III, Indianapolis, Ind., Jerrald A. Crowell, Fort Wayne, Ind., for defendants-appellants.

Douglas B. Altman, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before SPRECHER, GEWIN * and TONE, Circuit Judges.

GEWIN, Circuit Judge.

Appellant Richard Q. Felts was charged with the knowing and intentional distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Appellant Christopher Havens, appellant Felts and three others were charged with unlawfully, knowingly and willingly conspiring to distribute cocaine in violation of 21 U.S.C. § 846. Both appellants waived a jury trial and were found guilty by the court.

Both appellants assert that the indictments were fatally defective for failing to allege a lack of authorization to distribute a controlled substance. Havens maintains that while the indictment alleged only one conspiracy, the evidence established two conspiracies resulting in a variance which substantially prejudiced his rights. Havens also challenges the sufficiency of the evidence. We find the arguments void of any merit and accordingly affirm.

On October 2, 1977 John McLeroth was arrested at the Miami airport and charged with importation of cocaine. He subsequently plead guilty and became the key government witness in appellants' trial concerning the events that transpired from March, 1977 through October 2, 1977.

McLeroth testified that in March 1977, appellant Havens' father, J. Lee Havens, recruited him to bring cocaine into the country from Peru. During the first of April of 1977 McLeroth met with appellant Havens and his father to discuss the details of his trip to Peru. On April 25, 1977 the three met at the father's house and appellant Havens gave McLeroth expense and "buy" money for the trip to Peru. Appellant Havens' father and McLeroth arrived in Peru the following day.

While in Peru they met with Augusto Gonzales-Virgil who supplied them with approximately four pounds of cocaine that was taped to McLeroth's body. They cleared customs without incident and the cocaine was turned over to J. Lee Havens.

There was a delay in McLeroth receiving the remainder of his payment, but J. Lee Havens assured him that appellant Christopher Havens was working very hard at selling it because Christopher had selected an automobile he desired to purchase. J. Lee Havens informed McLeroth of a further delay when the buyers rejected the cocaine because it contained some impurities. McLeroth was assured that "Chris" and "Rick" were attempting to purify it so that it would meet the necessary standard. McLeroth testified that he had seen "Rick" on two occasions and that he resembled appellant Richard Felts. In late May 1977 Christopher paid McLeroth the final $1,000 for his part in the smuggling operation.

Soon afterwards, they began preparations for McLeroth's second trip to Peru. Appellant Havens and his father designed and fitted McLeroth with a T-shirt with inside pockets to be worn by McLeroth to smuggle in the cocaine. In late July while the three were meeting, Christopher alluded to a domestic scheme for a purchase and resale of cocaine in the United States to fund the buy for an overseas trip.

On September 6, 1977 Christopher gave McLeroth the T-shirt with the buy money that he and Richard had sewed into the shirt. They were unable to purchase any cocaine in Peru and returned to the United States.

McLeroth left on his ill-fated trip to Peru on September 26, 1977. J. Lee Havens purchased the cocaine from Gonzales and the

---

* The Honorable Walter P. Gewin, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.

three of them placed the cocaine into little bags and placed them inside the T-shirt. McLeroth wore the T-shirt on the flight back to the United States. He was arrested in the Miami airport by customs officials.

James Bercot, a named co-conspirator, testified on behalf of the government that he and Jamie Kenwood (presently the wife of appellant Havens) smuggled cocaine from Peru for payment from appellant Felts. James Bercot, his brother Michael, appellant Felts and Naomi Felts lived together in a rented farmhouse. While living in the farmhouse Felts and James Bercot attempted to rid 3 to 4 pounds of cocaine of impurities. The owner of the farmhouse testified that appellant Havens had accompanied the Felts when they rented the farmhouse. James Bercot also testified that appellant Felts told him that Christopher Havens had recruited two "mules" for the smuggling operation, McLeroth and J. Lee Havens. Appellants Felts and Havens discussed, on several occasions, in the presence of Bercot, the problems with the defense of J. Lee Havens. Appellant Felts suggested the possibility that they might assert that the T-shirt was manufactured evidence.

Both James Bercot, and his brother Michael, also a named co-conspirator, testified about the sale of cocaine to an undercover agent on July 27, 1978. Richard Felts was driving appellant Havens' car when he brought them the cocaine to sell. The money from the sale was turned over to appellant Felts.

The undercover agent substantiated their account of the sale, adding that Bercot told him that Christopher had made a buy the day before and that approximately five more ounces were available if he hurriedly sold the two ounces that he had just purchased. Another law enforcement officer substantiated the movements of appellant Felts on the day of the sale and observed him driving appellant Havens' car that was registered in his mother's name.

■ The first contention espoused by appellants is that the indictments were fatally defective for failing to allege a lack of authorization to distribute a controlled substance. Since the government readily concedes that the indictment did not allege a lack of authorization to distribute a controlled substance, the issue squarely is whether the absence of such an allegation renders the indictment fatally defective. After reviewing the clear language of the statutes and relevant case law, we are unable to embrace the view advocated by appellants.

Even a quick perusal of the statutory language discloses that 21 U.S.C. § 885(a)(1) specifically states that the government need not negative any exemption or exceptions in Subchapter I of Chapter 13 of Title 21 of the United States Code. Furthermore, § 885(b) clearly states that a presumption of non-registration arises in the absence of proof of such registration, and places the burden of going forward with respect to such registration upon the holder.

We adhere to our earlier view that to require the government to allege and prove non-registration of each defendant charged in an indictment would be a substantial waste of government resources. *United States v. Kelly,* 500 F.2d 72 (7th Cir. 1974). Fidelity to our past decisions and the clear congressional intent of § 885(a)(1) requires us to sustain the validity of an indictment that fails to allege non-registration.

Our view is congruous with that of the Fifth Circuit which held that it was unnecessary for an indictment to expressly allege that the acts committed were unlawful when the defendant could not make a lawful distribution under § 841(a)(1) or any of its exceptions. *United States v. Miranda,* 494 F.2d 783 (5th Cir. 1974).

The final two issues raised will be considered together: (1) whether the evidence established the existence of multiple conspiracies and prejudiced appellant Havens; and (2) whether sufficient evidence was presented to convict appellant Havens of conspiracy to distribute cocaine.

■ Appellant Havens maintains that the evidence established two conspiracies. The first being the conspiracy to import cocaine which culminated upon the arrest of J. Lee Havens and McLeroth on October 2, 1978. The alleged second one involved the

conspiracy to distribute cocaine and occurred in July, 1978. Christopher Havens asserts that at most the evidence may have established his involvement in a conspiracy to import cocaine but was insufficient to establish his involvement in the conspiracy to distribute. The government contends that the evidence demonstrates the existence of a continuing conspiracy rather than multiple conspiracies.

After carefully reviewing the evidence which evolved at trial we are convinced that the government amply proved the existence of a continuing conspiracy. Furthermore, the evidence was sufficient to establish appellant Havens' entanglement in the conspiracy to distribute cocaine.[1]

There can be no doubts surrounding Christopher Havens' complicity in the conspiracy during its early months. In April 1977 appellant Havens and his father met with McLeroth to discuss the method to be used to smuggle in the cocaine from Peru. It was Christopher who gave McLeroth the buy money for the trip to Peru. After the successful trip, Christopher made one of the $1,000 payments to McLeroth. There was a delay in the payments that McLeroth was to receive. He was told by J. Lee Havens that "Chris" and "Rick" were attempting to purify the cocaine so that it could be sold because "Chris" was anxious to buy a car. McLeroth was later shown the Mercedes that Christopher had purchased.

In preparation for a later drug buy, Havens and his father designed a pocketed T-shirt for McLeroth to use to smuggle in the cocaine. They "tested" the shirt with bags of sugar.

In the summer of 1977, in a conversation with McLeroth,[2] Christopher alluded to a domestic scheme, contemplating the purchase and distribution of cocaine, to finance a later overseas "buy." Christopher explained their shortage of buy money because they had to spend $30,000 buying back a portion of the cocaine that they had sold earlier.

In July 1977, Christopher accompanied appellant Felts and Naomi Felts when they leased a farmhouse. The farmhouse was later used by appellant Felts and Jim Bercot as a laboratory when they attempted to purify the cocaine. Michael Bercot purchased cocaine from Richard Felts in the farmhouse in the fall of 1977.

■ Appellant Havens urges us to view the facts as establishing the existence of two conspiracies, one to import and the other to distribute. We decline to so interpret the facts. It seems clear to us that the importation was accomplished in contemplation of distribution of the cocaine. The mere fact that one member of the conspiracy concentrates his efforts on one facet of the conspiracy does not dilute his culpability for the acts of his co-conspirators in furtherance of their scheme. *See United States v. Cervantes,* 466 F.2d 736 (7th Cir. 1972).

Moreover, several of the co-conspirators were actively conspiring to distribute cocaine subsequent to the arrest of J. Lee Havens and McLeroth and prior to the July 1978 sale to undercover agents. Appellant Felts informed James Bercot of the possibility of obtaining ten pounds of cocaine in Florida and selling one-half of it to a Pittsburgh buyer. James Bercot and Richard Felts made three cocaine-transporting trips to Michigan. Michael Bercot made two cocaine purchases from Felts in Indiana.

In addition to appellant Havens' complicity in the early part of the conspiracy, Havens was directly involved with distribution of cocaine to the undercover agent. It was disclosed at trial that appellant Havens was staying with appellant Felts during the time of the sale of cocaine to the undercover agent. Felts used Havens' Mercedes to deliver the second ounce of cocaine to James Bercot to be delivered to the agent. A fortiori the statement of a co-conspirator to the agent that Christopher had supplied him with the cocaine that was sold to the

1. *United States v. Fox,* 437 F.2d 733 (7th Cir. 1971).

2. The court below correctly admitted the statements of Havens' co-conspirators under *United States v. Santiago,* 582 F.2d 1128 (7th Cir. 1978).

**150**

agent vitiated appellant's argument of mere association.

We view the totality of Havens' actions as being more than mere association. *United States v. Mancillas,* 580 F.2d 1301 (7th Cir. 1978). We find appellants were directly involved in a continuing conspiracy[3] to distribute cocaine and accordingly the judgment is AFFIRMED.

---

**3.** *United States v. Bastone,* 526 F.2d 971 (7th Cir. 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976); *United States v. Varelli,* 407 F.2d 735 (7th Cir. 1969).