**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David SCHMUCKER–BULA,**
**Defendant-Appellant.***

No. 78–2247.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1979.

Decided Jan. 18, 1980.

*Editor's Note:* The opinion of the United States Court of Appeals, Ninth Circuit in *United States v. Melchor-Lopez,* published in the advance sheets at this citation 609 F.2d 399, was withdrawn from the bound volume at the request of the court.

Michael Radzilowsky, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., William A. Barnett, Jr., Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and PELL, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

The defendant, David Schmucker-Bula, appeals from his conviction and sentence for conspiring with Carlos Ferreira-Camargo and Augustin Bernier to import cocaine in violation of 21 U.S.C. § 963. The primary question on appeal is whether the conspiracy charged in the indictment was within the criminal jurisdiction of the United States. The defendant also questions the sufficiency of the evidence of his involvement in an importation conspiracy as well as the sentence imposed.

As seems to be true in most smuggling conspiracy cases, the facts present a series of complex interactions between the various individuals involved in the transactional processes. In September 1977, a Drug Enforcement Administration informant in Chicago, Samuel Yunez, arranged through his brother-in-law in Colombia to go into the business of selling cocaine. In the course of making these early arrangements, Yunez spoke several times on the phone from Chicago to his brother-in-law and traveled to Colombia. In November 1977, the informant Yunez spoke by telephone with Carlos Ferreira-Camargo (Ferreira), the defendant's co-conspirator who was in Colombia. Ferreira agreed to send a sample of cocaine to Chicago, which Yunez later received in the mail. Ferreira later attempted unsuccessfully to enter the United States for the purpose of delivering more cocaine.

After this incident, Yunez called the same phone number in Colombia and this time spoke with the defendant. They arranged to meet in Santo Domingo, Dominican Republic, for negotiations. In Santo Domingo, Yunez and other DEA agents met with the defendant and Ferreira, both of whom were aware that the drugs were destined for the United States. The parties discussed the terms of the sale, the quality of the drugs, and arrangements for their transfer. During these negotiations, the defendant refused to agree to a delivery outside of Colombia. It was agreed, however, that the transaction would be secured through the cover of General Motors Acceptance Corporation financing facilities in the United States and Colombia.

In the course of negotiations, Yunez and Ferreira also discussed over the phone delivery of the drugs to an American vessel in international waters and procuring an airstrip in Colombia for exporting the cocaine to the vessel. From Ferreira's comments, it is evident that the cocaine was to be obtained from a third party source.

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

Negotiations continued, and, in early January, Schmucker and Ferreira agreed to meet again with Yunez and the agents in Panama. In Panama, Ferreira raised the price per kilo substantially. It was then decided that no sale would take place until he could deliver the cocaine at the original price.

On January 20, 1978, the defendant called Yunez offering to sell the cocaine for a lower price. During this conversation the defendant said Ferreira was no longer involved. Yunez went to Colombia. During that trip, Augustin Bernier was introduced to Yunez as the defendant's partner, and the defendant showed Yunez a large quantity of cocaine. Negotiations continued until the defendant complained to Yunez that the 100 kilograms were ready and that his source wanted to be paid. They agreed to finalize the arrangements in Panama. When in Panama for this meeting the defendant and Bernier were arrested by Panamanian officials at the request of the United States. Ferreira was never apprehended.

The defendant was indicted with Ferreira and Bernier. After trial before a jury, the defendant was convicted of conspiracy in violation of 21 U.S.C. § 963, but acquitted of the two substantive charges.[1] The district court sentenced the defendant to a fifteen year term of imprisonment to be followed by a three year mandatory special parole term. It is from this conviction and sentence that the defendant appeals.

The defendant has argued that the United States cannot prosecute him as a non-citizen merely for planning a sale of cocaine outside of United States territory. This argument mischaracterizes the nature of the defendant's criminal activity. Before we reach the defendant's jurisdictional argument, we therefore must turn to a discussion of the defendant's involvement in the conspiracy to import cocaine.

The defendant has argued on the basis of *United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940), that

one who without more furnishes supplies to an illicit [enterprise] is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy to which the [purchaser] was a party but of which the supplier had no knowledge. 311 U.S. at 210–11, 61 S.Ct. at 207. According to the defendant, only the DEA agents were involved in importing the cocaine, and his activities as a seller were insufficient to make him liable as a conspirator in the importation.

Viewed in the light most favorable to the Government, the evidence is more than sufficient to show the intent of the defendant and the other sellers to further the purpose of the buyers to import the cocaine. The testimony of Special Agent Jiminez, for example, described the November 1977 meeting in Santo Domingo between the agents, the informants, and the conspirators. During that meeting, the agents informed the conspirators of their plan to smuggle the cocaine into the United States. With this knowledge of the agents' purpose, the defendant and the other sellers discussed the possible methods of delivery and movement of the cocaine, including the use of a boat on international waters. Later in the course of the negotiations, the defendant mentioned the availability of a safe airplane landing area in Colombia. One plan suggested during negotiations was to take the boat to a "neutral" country, fly crewmen from Colombia to the boat, and then take the boat to Colombia for loading. The boat would then rendezvous with another in international waters for delivery of the drugs for further transportation to the United States.

Of course, as the defendant argues, these plans were never carried out. Nevertheless, it is an elementary principle of conspiracy law that the criminal venture need not succeed for there to be criminal liability. *E. g., United States v. Wornock*, 595 F.2d 1121, 1123 (7th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 70, 62 L.Ed.2d 46; *United States v. Rose*, 590 F.2d

---

1. Bernier was charged only with conspiracy and was acquitted.

232, 235–36 (7th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979). It is sufficient that the conspirators knowingly encouraged and arranged the transportation of drugs that would end in the United States, *see United States v. Cadena,* 585 F.2d 1252, 1265–66 (5th Cir. 1978), for then

> [t]he step from knowledge to intent and agreement may be taken. There is more than suspicion, more than knowledge, acquiescence, carelessness, indifference, lack of concern. There is informed and interested cooperation, stimulation, instigation. And there is also a "stake in the venture" which, even if it may not be essential, is not irrelevant to the question of conspiracy.

*Direct Sales Co. v. United States,* 319 U.S. 703, 713, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674 (1943). The defendant points to evidence in the record that indicated the sellers were indifferent to the destination of the cocaine. From the verdict, it is clear that the jury did not believe this evidence, and we see no reason to question this finding. The sale of so large a quantity of cocaine was dependent upon the feasibility of smuggling it into the United States. Furthermore, the defendant cannot escape liability merely because the purchasers took primary responsibility for the smuggling arrangements. *See United States v. Felts,* 602 F.2d 146, 149 (7th Cir. 1979); *United States v. Lawson,* 507 F.2d 433, 439 (7th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762.

2. The jury was properly instructed that "[t]he evidence must . . . establish that at least one overt act was committed by one of the co-conspirators within the United States." Although the defendant was acquitted on the substantive charges relating to the mailing of the sample packet, we need not inquire into the possibility that the jury's conspiracy verdict was based in part on inconsistent findings. *See United States v. Serlin,* 538 F.2d 737, 747 (7th Cir. 1976). The jury may well have found, however, that Ferreira, also a conspirator, mailed the packet.

3. The rationale of the Government's jurisdictional argument is difficult to discover from the one paragraph devoted to it in the brief, primarily because the cases cited do not establish

■ Because the defendant's crime was conspiracy to import cocaine into the United States and not merely an attempt to sell the drug to United States agents overseas, we need not dwell at length on the jurisdictional issue. A sovereign has jurisdiction to punish crimes that occur within its territory. *See, e. g., Wilson v. Girard,* 354 U.S. 524, 529, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957); *Kinsella v. Krueger,* 351 U.S. 470, 479, 76 S.Ct. 886, 100 L.Ed. 1342 (1956); *Lawson, supra,* 507 F.2d at 445. This principle has been applied to confer jurisdiction over conspiracies when at least one of the conspirators commits an overt act in the territorial jurisdiction of the United States district court. *E. g., United States v. Winter,* 509 F.2d 975, 982 (5th Cir. 1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41; *Lawson, supra,* 507 F.2d at 445. The defendant's jurisdictional argument is without merit because an overt act charged in the indictment satisfies this requirement: the mailing of the sample packet of cocaine to Chicago.[2] *See Benson v. Henkel,* 198 U.S. 1, 25 S.Ct. 569, 49 L.Ed. 919 (1905); *United States v. Spiro,* 385 F.2d 210 (7th Cir. 1967). *See also* 18 U.S.C. § 3237.

■ Relying on *United States v. Castillo-Felix,* 539 F.2d 9 (9th Cir. 1976); and *Brulay v. United States,* 383 F.2d 345 (9th Cir. 1967), the Government apparently urges that the intended impact of this importation conspiracy on the United States is sufficient to confer criminal jurisdiction regardless of the occurrence of an overt act in this country, and regardless of the absence of successful importation into this country.[3]

the novel principle urged. In *Castillo-Felix,* the conspiracy to smuggle aliens actually resulted in the illegal entry of aliens into United States territory, and thus the decision hardly departs from the well-settled principle of territorial jurisdiction set forth by the Supreme Court in *Strassheim v. Daily,* 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911):

> Acts done outside a jurisdiction but intended to produce *and producing* detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect . . . . .

*Id.* at 285, 31 S.Ct. at 560 [Emphasis added]. *See United States v. King,* 552 F.2d 833, 850–52 (9th Cir. 1976); *Rocha v. United States,* 288 F.2d 545, 548–49 & n.4 (9th Cir. 1961), *cert.*

This theory has been accepted apparently in the Fifth Circuit which recently invoked jurisdiction solely on the basis of the intended impact of an importation conspiracy in the United States. *United States v. Williams*, 589 F.2d 210 (5th Cir. 1979); *United States v. May May*, 470 F.Supp. 384, 394–96 (S.D.Tex.1979). In *Williams*, the court noted that, in that circuit, proof of an overt act was not necessary to prove the conspiracy at issue under 21 U.S.C. § 963,[4] and that it would be an "anomalous requirement" to show an overt act within the United States merely for jurisdictional purposes. 589 F.2d at 213. The problem of securing our borders against the drug importation trade has become increasingly severe, not surprisingly so in view of the profitability of the business and the frequent sophistication of its entrepreneurs. The efforts of the defendant to avoid actual contact with the United States while profiting from its illegal drug trade exemplify the sort of evasive tactics the Government must combat in attempting to control this traffic. Like the Fifth Circuit, we therefore might not be inclined to limit extraterritorial criminal jurisdiction over aliens whose intended actions, if successful, would compromise this sovereign's control of its own borders. *See generally* LaFave & Scott, Criminal Law § 16 at 111 (1972). In any event, the indictment before us charges an overt act within the territorial jurisdiction of the district court, and we therefore decline to rule on this difficult issue until it is necessary to our decision.

The defendant's other arguments require little discussion. The record contains a transcript of a telephone call which occurred January 20, 1978. During this conversation the defendant told the informant Yunez that he would sell 100 kilos for $19,000 per kilo, but that Ferreira was no longer involved. The conspiracy charged in the indictment extends well beyond the date of that call. Accordingly, evidence of events that occurred after that date, including evidence of a meeting during which the defendant showed the large quantity of cocaine to Yunez, was introduced. The defendant argues on appeal, however, that the trial court committed prejudicial error in admitting this post-January 20 evidence, because the conspiracy between Schmucker and Ferreira was at an end. The logic of the defendant's argument escapes us except to the extent that it is an attempt to transform an argument challenging the sufficiency of the evidence into an argument alleging legal error. It is true, as the defendant argues, that courts should be vigilant against the transfer of guilt "from one to another across the line separating conspiracies . . . ." *Kotteakos v. United States*, 328 U.S. 750, 774, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946). It is also true, however, that the existence of multiple conspiracies is a question of fact, and the role of the court is generally limited to instructing the jury when the possibility of a variance between the evidence and the conspiracy charged in the indictment arises. *See United States v. Papia*, 560 F.2d 827, 838 (7th Cir. 1977); *United States v. Varelli*, 407 F.2d 735, 746 (7th Cir. 1969), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581. The trial court properly instructed the jury that proof of several conspiracies is insufficient to permit conviction unless one of the conspiracies proved is the one charged in the indictment. Because there is evidence of a single conspiracy extending past January 20 sufficient to support the jury's verdict, *see United States v. Glasser*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the defendant's challenge must fail.[5]

denied, 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241; *United States ex rel. Majka v. Palmer*, 67 F.2d 146, 147 (7th Cir. 1933).

In *Brulay*, also cited by the Government, jurisdiction was justified on the basis of the United States citizenship of the defendant, under the rule of *United States v. Bowman*, 260 U.S. 94, 98, 43 S.Ct. 39, 67 L.Ed. 149 (1922).

4. Our research reveals no decision in this circuit on the question whether section 963 re-

quires proof of an overt act. We need not determine the issue at this time, however, because the indictment alleges overt acts in furtherance of the importation conspiracy. *See United States v. Winter*, 509 F.2d 975, 983 n.25 (5th Cir. 1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41.

5. It is quite clear the defendant and Ferreira were selling for a third party source. Yunez' brother-in-law Ortero was involved as a go-be-

The defendant's final argument on appeal concerns the severity of the sentence.[6] The defendant argues that the trial court did not consider mitigating factors in the presentence report. The record does not support this allegation. The court was expressly informed of and acknowledged these factors, but nevertheless agreed with the Government that because the defendant played a substantial role in a sophisticated drug organization that arranged to sell an enormous quantity of illegal drug,[7] his crime was sufficiently aggravated to merit a harsh sentence. The sentence was within the statutorily prescribed range, and we therefore decline to disturb it. *See, e. g., Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *United States v. Harris,* 558 F.2d 366 (7th Cir. 1977).

Accordingly, the judgment is affirmed.

---

tween both before and after January 20. Furthermore, in light of the defendant's own statement that he was a mere mediator, and the absence of any delay between Ferreira's purported disappearance and the defendant's production of the large quantity of cocaine, it is fair to conclude the single conspiracy charged in the indictment continued for the entire time alleged.

6. The defendant was not fined, but did receive the maximum term of imprisonment and mandatory special parole.

7. The 100 kilos of cocaine had a purchase price of at least $1.6 million.