**UNITED STATES of America, Plaintiff,**

v.

**Jose Manuel ACOSTA and Roberto Rodriguez, Defendants.**

**No. 79–448–Cr–EPS.**

United States District Court,
S. D. Florida,
Miami Division.

March 26, 1980.

Steven E. M. Hartz, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Michael J. Rosen, Miami, Fla., for Rodriguez.

Robert L. Moore, Miami, Fla., for Acosta.

## MEMORANDUM OPINION AND ORDER

SPELLMAN, District Judge.

Defendants Acosta and Rodriguez have moved to suppress the evidence seized aboard the vessel "Nivaldo Games" by customs agents. The stop of the vessel and the subsequent seizure of marijuana raises two issues not resolved by the case law of this Circuit. First, how remote can the information relating to a ship crossing into international waters be and still support a finding of "articuable facts" justifying a border search? Second, may customs agents board a ship sighted in intercoastal waters under 19 U.S.C. § 1581 for a document and safety check with less than reasonable suspicion to believe a customs violation is occurring or under the blanket authorization of that statute? For the following reasons, which touch upon both these issues, the motion to suppress is granted by this Court.

### I. FACTS

The "Nivaldo Games" had been spotted around 3:00 A.M. on November 17, 1979 by customs officials, with three crewmen aboard, and was followed by customs air-

craft and observed moving rapidly toward Orange Cay in the Bahamas. Over eighty hours later, November 21, 1979 at 11:30 A.M., the vessel was again observed traveling up the Miami River. On the last mentioned date, the ship was tailed by automobile until it reached its normal place of mooring.

Customs agents arrived at the docking area, climbed over the fence, and moved through an area filled with lobster traps. As the agents approached the vessel they identified themselves. Defendant Acosta was on the boat at the time, and defendant Rodriguez was in the process of tying up the bow of the boat. Rodriguez reportedly moved rapidly away from the boat and two agents pursued him. A third agent boarded the boat and walked past Acosta, opening the closed hatch of the vessel. The customs agent then saw what appeared to be marijuana in the engine room. Additional marijuana was later found in the refrigerated hold of the ship.

## II. THE SEARCH WAS INVALID AS A BORDER SEARCH OR A SEARCH AT ITS FUNCTIONAL EQUIVALENT

■ The Government argues that the search and seizure of the vessel should be upheld as a valid search at the border or its functional equivalent. This Court holds that the Government has failed to establish "articuable facts" from which customs officials could have reasonably believed at the time of the search and seizure that the vessel came from international waters. *United States v. Whitmire*, 595 F.2d 1303, 1307 (5th Cir. 1979), *cert. pending.*

The facts of this case as established at the suppression hearing before this Court are that the vessel "Nivaldo Games" was not under surveillance for eighty hours

from the time the ship was last seen proceeding towards the Bahamas; that the Government possessed no information, confidential or otherwise, when the vessel had crossed the border from international waters; and that the boat's structure did not indicate in any way that the ship was coming from outside the United States.[1]

The Government adduced evidence at the hearing that the "Nivaldo Games" was not berthed at its normal spot twenty-four hours before it was sighted on November 21, and that the boat was normally moored in an area known for trafficking and smuggling in narcotics.

Based solely on this evidence, this Court cannot conclude that customs officials could reasonably believe that the vessel searched crossed the international border and proceeded directly to its place of mooring, or that the "Nivaldo Games" was in the same condition at the time of the search as when it returned from international waters, whenever that event occurred.

■ No case in this Circuit clearly deals with the issue of how remote information relating to a border crossing may be, and still supply the "articuable facts" necessary to uphold the stop and search of a vessel at the functional equivalent of the border. It is clear from the cases in this Circuit that to establish a border search the trial judge must view all the attendant circumstances of the encounter, including the time elapsed between sightings, the distance travelled, as well as the manner and extent of surveillance. *United States v. Fogelman*, 586 F.2d 337, 343 (5th Cir. 1978); *United States v. Brom*, 542 F.2d 281 (5th Cir. 1976), *United States v. Flores*, 531 F.2d 222 (5th Cir. 1976).

---

1. Testimony at the suppression hearing established that the "Nivaldo Games" resembled a normal lobster vessel in all respects except for a dearth of lobster traps on the deck. Several cases have indicated that the configuration of a vessel or automobile may be relevant in establishing reasonable suspicion in a border search context. *See e. g., United States v. Brignoni-Ponce*, 422 U.S. 873, 875, 95 S.Ct. 2574, 2577, 45 L.Ed.2d 607 (1975); *United States v.*

*Kleinschmidt*, 596 F.2d 133, 135–6 (5th Cir. 1979). It logically follows that this consideration may have relevance in establishing the "articuable facts" necessary to establish a border crossing. *See United States v. Whitmire, supra* at 1306–7, where the court noted that the boat "was encrusted with salt crystals such as might have formed during an extended ocean voyage", but went on to reject the border search analysis on the facts of that case.

The striking aspect of this case is that the customs agents had no confidential information or any information at all that indicated the "Nivaldo Games" was not in United States waters previous to the boarding, except for the fact the vessel was seen proceeding toward the Bahamas some eighty hours earlier. It is equally reasonable to assume that the lobster boat made several domestic stops after its return from international waters. Based on the foregoing, the Government has not proved a sufficient nexus to the border to establish the authority for a border search. Thus, any stop and search of the "Nivaldo Games" cannot be justified on those grounds.

### III. THE SEARCH OF THE "NIVADLO GAMES" CANNOT BE JUSTIFIED UNDER 19 U.S.C. § 1581 OR ON GROUNDS OF REASONABLE SUSPICION

■ The Government also argues that the stop and search can be upheld under plenary power given to customs officials pursuant to 19 U.S.C. § 1581. This power permits customs officers to board boats sighted in customs waters the second time, therefore this case raises the issue discussed but not decided by the Fifth Circuit in *United States v. Whitmire, supra.*

In *Whitmire,* the Court of Appeals held that a pleasure boat was reasonably boarded when officers initially sighted the boat in intercoastal waters and had reasonable suspicion of a customs violation. 595 F.2d at 1316. The Court noted that the twenty-five foot pleasure boat was generally visible and the privacy expected in such an area would be minimal. The Court further indicated that appellants were no longer aboard. In addition, officers observed the appellants flouting traffic rules and possessed *other facts* leading them to reasonably suspect a customs violation. *Id.* Judge Gee also stated that the balancing formula used in these cases which weighs defendant's privacy interest, the degree of intrusion and the public interest

"might support a blanket authorization of customs personnel to briefly halt vessels sighted in intercoastal waterways for random document and safety boardings. They might also support a rule that, upon reasonable suspicion, customs officers may board boats found there or in customs waters and do a limited inspection for obvious customs violations by viewing the interior of large, potentially cargo-bearing cavities of cargo or fishing vessels and pleasure boats whose construction reveals a capacity to conceal significant amounts of cargo. We do not need to presently face these situations."

595 F.2d at 1315. Thus, the *Whitmire* case did not reach the issue of § 1581 document and safety checks on intercoastal waterways.

In *United States v. Serrano,* 607 F.2d 1145 (5th Cir. 1979), the Court of Appeals held that customs officials may make an inland investigatory stop under § 1581 if they have reasonable suspicion to believe a customs violation has been committed, and where the evidence does not support suspicion of a boarder crossing, but only the presence of contraband. Under the facts of this case, neither *Whitmire* or *Serrano* can support the search and seizure of the "Nivaldo Games."

■ At a hearing before this Court, the customs investigator who went aboard the "Nivaldo Games" testified that he boarded the vessel to search for customs documents *and* contraband. The testimony and actions of the agent indicate that if he boarded pursuant to § 1581, this boarding was only a pretext to search for contraband. The boarding officer never even asked defendant Acosta on the ship for documents; he just proceeded to search the ship area and open the closed hatch, whereupon he sighted and seized the marijuana.

■ The search in this case likewise cannot be justified under the theory of "exigent circumstances." The customs agent who boarded the boat and opened the hatch testified on examination by the Court that he "feared for his safety." This fear arose solely from the general area in which the search took place and had no bearing on the

principals involved with the boat or the boat itself. Certainly, had some indication been given that the fear expressed emanated from the boat to be searched, the Court might have considered this an "exigent circumstance." There was in fact a third person who had been observed on the boat as it came up the Miami River. The whereabouts of this individual at the time of the search is totally unknown. The fear that a third party might have been located inside the hatch under the attendant circumstances could very well have justified the customs agent in opening the otherwise closed hatch. However, when questioned as to the reason for his opening the hatch, the customs agent indicated that the sole reason therefor was to look for documents and contraband. Under such circumstances, this Court fails to see how the same can come within the Fifth Circuit Court of Appeals' opinion in the recent case of the *United States v. Alfrey*, 612 F.2d 180, 184 (5th Cir. 1980).

Under the circumstances, the Court concludes that the seizing customs agent boarded the "Nivaldo Games" to search for contraband. Under the *Serrano* opinion, such a boarding needs reasonable suspicion to believe a customs violation is occurring. Based on the lack of confidential information relating to the "Nivaldo Games" or these defendants, and the lack of any suspicious behavior in the piloting of the ship or by the crew, this Court concludes that customs officials had no reason to believe a customs violation was occurring and the boarding pursuant to 19 U.S.C. § 1581 is therefore invalid.

### IV. STANDING

 The Government has also raised the issue of defendants' standing to contest the search of the vessel despite the "automatic standing" rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The Government argues that *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), has cut back or overruled *Jones* as to make it inapplicable to the present case. Several recent Fifth Circuit

opinions have questioned the continued validity of *Jones*. *See United States v. Vicknair*, 610 F.2d 372, 378 n.5 (5th Cir. 1980); *United States v. Reyes*, 595 F.2d 275, 279 (5th Cir. 1979).

Viewing the issue of standing in the context of the substantive Fourth Amendment doctrine as *Rakas* requires, this Court rejects the argument that defendants' have no expectation of privacy in the boat. Since the initial stop and boarding of the "Nivaldo Games" was illegal, this Court does not have to reach the issue of defendants' standing to challenge the subsequent search and seizure aboard that vessel. *United States v. Williams*, 589 F.2d 210, 214 (5th Cir. 1979).

Based on the foregoing, it is

ORDERED AND ADJUDGED that the defendants' Motion to Suppress the evidence aboard the vessel "Nivaldo Games" is GRANTED and the evidence seized be and the same is hereby suppressed.