UNITED STATES of America, Plaintiff-Appellee,

v.

Emerson MOLT, Defendant-Appellant.

No. 84–3164.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1985.
Decided Sept. 10, 1985.

Swygert, Senior Circuit Judge, filed concurring opinion.

Jerome Frese, U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Sam Adam, Chicago, Ill., for defendant-appellant.

Before CUDAHY and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

An indictment charged Emerson "Bud" Molt and 40 others with conspiring to import and to possess with intent to distribute marijuana and cocaine. Ronald Markowski, the kingpin of the operation (see *United States v. Markowski*, 772 F.2d 358, also decided today), was tried separately. Others pleaded or were found guilty, fled, or were never captured. Molt was tried alone and convicted. One defendant remains to be tried.

The case against Molt consists principally of the testimony of five of the conspirators, four of whom placed Molt at meetings discussing drug smuggling operations or at the scene of specific importations. The evidence, properly taken in the light most favorable to the government, portrayed Molt as pilot, radio operator, off-loader, and factotum of a drug ring. Ronald Markowski, Frank Brady, and perhaps another were ringleaders. Brady owned land in Florida, which the smugglers used as a

meeting place, and on Cat Island, Bahamas, which they used as a stopover on trips from Colombia. Molt was Brady's right-hand man and one of the pilots.

The normal course of operations was for Markowski or one of his partners or employees to fly marijuana or cocaine from Colombia to an airstrip in the Bahamas. The smugglers would either store the drugs there for later trips or take them by air immediately to Florida or Georgia. Other participants would transport the drugs to Northern Indiana for distribution there and in Chicago.

Molt's role was as coordinator on the ground in the Bahamas, where he made sure planes could land safely, refueled them, unloaded drugs, and reprovisioned other smugglers. He also took to the air as a "cover" pilot, looking out for surveillance and potential interference on the ground. Once he helped rescue a stranded smuggler. Some of the evidence shows Molt discussing the dates and times of smuggling operations. We need not recount the evidence more fully.

The court sentenced Molt to a total of eight years' imprisonment. He challenges the admission of co-conspirators' out-of-court statements, the finding that there was a single conspiracy, the conclusion that there was venue in Indiana, and the disposition of claims under the Jencks Act, 18 U.S.C. § 3500.

## I

The five smugglers who testified against Molt recounted many conversations among other conspirators. Molt maintains that the admission of these statements violated the Confrontation Clause of the Sixth Amendment. A motions panel of the court found this argument unlikely to prevail and so denied Molt's application for bail pending appeal. *United States v. Molt*, 758 F.2d 1198 (7th Cir.1985).

■ This court has held on many occasions that the only test for admissibility of a conspirator's out-of-court statement is whether the statement complies with Fed.

R.Evid. 801(d)(2)(E). E.g., *United States v. Williams*, 737 F.2d 594, 610 (7th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. Xheka*, 704 F.2d 974, 987 n. 7 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983); *Davis v. Franzen*, 671 F.2d 1056, 1058 (7th Cir.1982). The statements admitted here complied with Rule 801(d)(2)(E). They were made during the conspiracy and in furtherance of its objectives. Molt urges us to reconsider our position in light of *United States v. Inadi*, 748 F.2d 812 (3d Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985), which holds that the Sixth Amendment requires the government to show that the conspirator-declarants are unavailable before it may introduce their declarations through others. See also *United States v. Caputo*, 758 F.2d 944 (3d Cir.1985).

Because the Court has granted review in *Inadi*, it is unnecessary for us to treat the matter fully. The Supreme Court will do that, and if Molt files a petition for certiorari he will get the benefit of any favorable decision. We do not think that a favorable decision in that forum is likely, however, and we therefore do not think that Molt should receive relief pending the Court's ruling.

The co-conspirator rule is an old one. See 4 J. Wigmore, *Evidence in Trials at Common Law* § 1079 (J. Chadbourn ed. 1972). The Court has allowed the use of hearsay, despite objections based on the Confrontation Clause, when it bore sufficient indicia of reliability. E.g., *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972). The declarations of conspirators are usually reliable in the pertinent sense. They are contemporaneous statements in an ongoing business relation. The person who reports these statements may be unreliable, but he is in court and may be cross-examined. If the witness recounts the statements accurately, there is no particular reason to believe that the busi-

ness arrangements among the conspirators are other than as the statements depict them.

The declarations are reliable in the same sense that contracts or negotiations among legitimate business partners usually portray accurately the affairs of those involved. They are acts as much as they are reports. They have value independent of the truth of the matter stated. These statements are not pale substitutes for live testimony about what the conspirators did; their value usually lies in the very fact that people said certain things on the spot to other conspirators. Testimony in court would not replicate what is important about the statements.

The Supreme Court twice has rebuffed objections under the Confrontation Clause to the use of coconspirators' statements. See *Delaney v. United States,* 263 U.S. 586, 590, 44 S.Ct. 206, 207, 68 L.Ed. 462 (1924), which brusquely rejects a challenge to the traditional rule, and *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), which sustains a state rule that admits evidence in addition to that permitted by the traditional formulation reflected in Rule 801(d)(2)(E). The Third Circuit said in *Inadi* that the Supreme Court had changed its mind. It relied on dictum in *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538, that in the "usual case ... the prosecution must either produce, or demonstrate the unavailability of, the declarant ...." We do not think that the Court meant to repudiate *Delaney* and *Dutton,* which it did not mention in this passage. The opinion in *Roberts* went on to observe "the truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values' and 'stem from the same roots.'" 448 U.S. at 66, 100 S.Ct. at 2539 (citations omitted). Although the Court ultimately may agree with *Inadi,* the probability that it will overrule *Delaney* and *Dutton* is sufficiently small that we think Molt's conviction should stand in the interim.

As an aside, Molt argues that the statements admitted in this case were not "in furtherance" of any conspiracy. The argument is feeble. Molt does not point to any one statement inadmissible for this reason. Our review of the record turned up only conversations concerning planning or review of the drug ring's exploits. The district court correctly found that the conversations were admissible under Rule 801(d)(2)(E).

## II

Molt makes related arguments concerning the scope of the conspiracy and the venue of the prosecution.

■■■ Molt says that the jury erroneously found that there was one conspiracy instead of several. He claims that each importation was a separate conspiracy because not all the same people participated in each importation. But whether there was one conspiracy or many is a question of fact for the jury's determination. *United States v. Schmucker-Bula,* 609 F.2d 399, 403 (7th Cir.1980). The jury easily could have found a single conspiracy, occurring from 1977 through 1982, run by common leaders. Witnesses testified to the conspiracy's activities throughout this period. Three witnesses testified that Cat Island was a refueling spot for multiple importations of marijuana and cocaine. Four eyewitnesses identified Molt as pilot, refueler, and radio operator for Cat Island. The jury was instructed that it had to determine whether a single conspiracy existed from 1977 through 1982. We see no reason to set aside the jury's verdict on this issue.

■■ The conclusion that there was but one conspiracy disposes of Molt's further argument about venue. Venue is proper in any district where an "offense was begun, continued, or completed." 18 U.S.C. § 3237(a). As long as one overt act in furtherance of the conspiracy was committed in a district, venue is proper there. *United States v. Brown,* 739 F.2d 1136, 1148 (7th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984); *United States v. Mayo,* 721 F.2d 1084, 1089–91

(7th Cir.1983); *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *United States v. Schmucker-Bula*, 609 F.2d at 402. Molt conceded at oral argument that if there was only one conspiracy, then venue was proper in the Northern District of Indiana.

■ The concession was appropriate, for the evidence establishes several overt acts in the Northern District of Indiana, the northern terminus of the smuggling operation. The drugs ultimately were transported into the district. The evidence also shows that Markowski flew a plane used in at least one smuggling trip from Gary, Indiana, to Valparaiso, Indiana, so that a conspirator could "sweep" the plane to detect electronic bugs. Another plane was inspected in LaPorte, Indiana. Markowski and another conspirator met in Gary, Indiana, to inspect a plane that had been used to smuggle marijuana. LaPorte, Gary, and Valparaiso are in the Northern District of Indiana. These and other overt acts in the district were all part of a five-year conspiracy to import and distribute drugs. The fact that Molt was never in the district is immaterial. *Brown*, 739 F.2d at 1148.

### III

The final argument rests on the Jencks Act, 18 U.S.C. § 3500. The dispute here concerns witnesses' statements before law enforcement authorities and grand juries outside Indiana.

At trial two witnesses testified that they had spoken to Florida law enforcement authorities and had testified before a Florida state grand jury as well as a grand jury in the Northern District of Indiana. John Devoe, a third witness, recalled that he had testified before federal grand juries in Minneapolis-St. Paul, Boston, and South Bend, a state grand jury in Florida, and the Royal Bahamian Commission, and that he had spoken with agents of the FBI, DEA, and IRS. After Devoe testified, Molt's counsel objected that he had not obtained transcripts or notes of all of Devoe's statements. During argument on this motion, the prosecutor stated that he had reviewed transcripts from Devoe's testimony before the Royal Bahamian Commission and at federal trials in West Palm Beach and Minneapolis-St. Paul. The prosecutor represented that he had found almost nothing in those transcripts relating to the subjects Devoe had addressed in Molt's trial, but he gave Molt's counsel material in those transcripts relating to plea agreements and to Devoe's meeting with the conspiracy's Colombian cocaine supplier.

The prosecutor had another Assistant U.S. Attorney review Devoe's testimony before the Boston grand jury. The prosecutor certified that there was nothing in the transcript relating to Devoe's testimony on direct. The court granted Molt's counsel's request to question Devoe more specifically about earlier testimony and statements. Devoe stated that the first time he had told any federal or state official about the escapades involving Molt was a "couple days" before he testified against Molt. After this reply, Molt's counsel had no further comment on the Jencks Act issue until a posttrial motion for a new trial. He then protested only that he had not been given a continuance before trial, which he had requested in order to obtain witnesses' testimony before Florida state grand juries and the other conspirators' trials in the Northern District of Indiana. Molt did not raise a Jencks Act complaint with respect to any of Devoe's testimony before federal grand juries or statements to federal officials.

■ The argument about the continuance is empty. The Jencks Act provides that a government witness's statement or report shall not be available until after the witness has testified on direct examination. *United States v. Harris*, 542 F.2d 1283, 1291 (7th Cir.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); 18 U.S.C. § 3500(a). Because the government was not required to give Molt any information before trial began, the court did not need to give Molt a continuance before trial. See *Harris*, 542 F.2d at 1293–94 (trial court should not delay trial to await preparation of trial transcripts).

The complaint that the government did not provide copies of witnesses' statements before Florida grand juries and non-federal investigating authorities is no better. The Jencks Act requires the government to produce only such material as it has. See § 3500(b); *Harris, supra,* 542 F.2d at 1292–93. Materials in the possession of state agencies are not within the scope of the Jencks Act. *United States v. Cagnina,* 697 F.2d 915, 922 (11th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983).

To the extent Molt is arguing that he should have received copies of witnesses' statements made to federal grand juries or investigators, his argument fails on the facts. Molt had transcripts of witnesses' testimony both before the Northern District of Indiana grand jury and at Markowski's trial in the same district. The only witness who spoke with or testified before federal authorities outside Indiana was John Devoe. Molt did not make the necessary motion (see § 3500(b)) with respect to Devoe. After Devoe finished testifying on direct examination, Molt's counsel complained as we described above. Under questioning Devoe said that he had never mentioned the activities involving Molt to any authority, state or federal, until approximately two days before he testified. At that time he spoke with the prosecutor at Molt's trial and a Michigan sheriff. Molt's counsel then stated, "I guess that takes care of 3500 material. Thank you, Your Honor." Molt's counsel was apparently satisfied that no *Jencks* material existed for Devoe and never said anything further. Molt cannot now claim that the court erred by not conducting a full in camera examination of Devoe's grand jury or other statements.

AFFIRMED

SWYGERT, Senior Circuit Judge, concurring.

Although I agree with the reasoning of the Third Circuit in *United States v. Inadi,* 748 F.2d 812 (3d Cir.1984), *cert. granted,* — U.S. ——, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985), holding that the confrontation clause of the sixth amendment requires the government to show that a non-testifying coconspirator is unavailable to testify before his hearsay statements can be admitted pursuant to Fed.R.Evid. 801(d)2E, I am constrained to follow prior decisions of this court which have adopted a contrary rule. Moreover, as the majority holds, *see ante* at 369, the defendant can still obtain relief should the Supreme Court affirm *Inadi. See Shea v. Louisiana,* — U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). I therefore concur in the affirmance of the conviction.