**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James D. VICARS and Joaquin Him**
**Gonzales, Defendants-Appellants.**

**No. 71-1995.**

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1972.

Rehearings Denied Nov. 6, and
Nov. 10, 1972.

454

Larry S. Parnass, Willie E. Phillips, Jr., James G. Clement, of Parnass, Weaver, McKaughan & Clement, Irving, Tex., for Vicars.

James L. McNees, Jr., Dallas, Tex., for Gonzales.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Cecil Emerson, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and MORGAN, Circuit Judges.

PER CURIAM:

Vicars appeals from jury convictions on five drug violation counts, two of them conspiracy counts and three substantive counts.[1] Gonzales was convicted on only the conspiracy counts and appeals therefrom.

■ Vicars' major point is that with respect to the conspiracy counts the court gave an "all or nothing" charge, requiring all defendants to be convicted under each conspiracy count if any one defendant was found to be guilty under that conspiracy count.[2] Proceeding count by count through the entire indictment, the court named the respective defendants charged under each count, and carefully defined the elements of each offense in terms of the defendants so named. Also it instructed that "each offense charged in the indictment and the evidence that is applicable to each defendant should be considered by you sep-

arately." Reading the entire charge, we find that it does not imply that if one defendant is found guilty under one conspiracy count all defendants must be found guilty under that count.

■■ As part of the same argument, Vicars assigns as error that Counts 1 and 2 each charge a single conspiracy, while as a matter of law the evidence showed at least two conspiracies, if any. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). There was evidence that Vicars sold a suitcase of cocaine to an agent on September 15, 1970, but he claims to be in no way involved in any activities after that date. The short answer is that there was evidence of acts by Vicars as late as January 1971, within the time during which the conspiracy is charged to have existed. The evidence does not preclude the existence of a single general and overall conspiracy—in fact, we find it surprising that the argument is even made. In any event the question of single versus multiple conspiracies is for the jury, Paz v. United States, 462 F.2d 740 (5th Cir. 1972), and while the jury was not in exact terms charged to determine whether there was one conspiracy or several, there was no objection to the failure. If error at all, it is not plain error requiring reversal.

The argument that there was insufficient evidence to support the conviction of Vicars under the conspiracy counts is frivolous.

■ Neither of the appellants is entitled to reversal on the basis of the courtroom conduct of codefendant Robertson. While testifying on direct examination on April 22, 1971, Robertson left the witness stand, stating that he "quit" and would refuse to testify. A recess was declared, and outside the presence of the jury Robertson began to

---

1. Count 1—conspiracy to sell (etc.) cocaine in violation of 26 U.S.C. § 4705(a) and 7237(b) ; Count 2—conspiracy to receive, conceal (etc.) cocaine after importation in violation of 21 U.S.C. § 174; Counts 3, 4 and 5—substantive violations of §§ 4705(a), 4704(a) and 174.

2. Vicars also asserts that the errors relating to the conspiracy counts are such that retrial is necessary on the substantive counts.

cry and to both admit his involvement but deny his guilt. Defendant Vicars made a motion for a mistrial, which was denied. At the insistence of the court Robertson resumed the stand and the direct examination continued, after which counsel for Vicars cross-examined for a few minutes. The following morning the trial continued without any difficulty, and cross examination by counsel for Vicars was completed, followed by cross by counsel for Gonzales and counsel for the government, and redirect by counsel for Robertson. All examination of Robertson after his outburst consumed nearly 100 pages of the transcript, without further incident. Respective counsel for Vicars and Gonzales, after completing cross, announced that they had no questions, and neither made known to the court any claim that his cross examination was restricted, impeded or curtailed by the outburst of the preceding day.

On the morning of April 26, Robertson refused to leave his cell, and was examined by a psychiatrist who gave an opinion that he was faking. That afternoon the trial was resumed with Robertson present, and he immediately engaged in a brief emotional and disruptive outburst in which he referred to himself as Judge Sarah T. Hughes (the trial judge), Ron Watkins (a witness for the government) and President John F. Kennedy. When he did not subside the judge had him removed from the courtroom. Motions for mistrial by the other defendants were denied.

The competency of the witness to continue his testimony on April 22 was a matter for the discretion of the court. The examination, and cross examination, which took place when Robertson resumed the stand, contains nothing to show to us that the judge's discretion was not correctly exercised. The same is true of the lengthy testimony the following day.

It is difficult to perceive how Vicars and Gonzales could have suffered any in-

jury by the outburst of April 26. It did not establish retrospectively that Robertson was incompetent when he had testified, because the psychiatrist, after examination, had given an opinion that he was faking. Insofar as his conduct may have caused the jury to have a diminished belief in his credibility, so long as he was competent credibility was a proper issue for the jury to resolve.[3]

There was no error in denying the motions of both appellants for severance.

■ Turning to points raised only by Gonzales, there was no reversible error in refusal of his motion for a continuance. His counsel was appointed on March 8, and trial was set for April 19. The motion for continuance on the ground of inadequate time to prepare for trial was not filed until April 13, which in the circumstances of this case was sufficiently close to the trial date that the court did not abuse its discretion by denying the motion.

■ On due process grounds, Gonzales objects to the fact that his counsel was allowed only 15 minutes for oral argument. All that occurred was this:

THE COURT: How much time do you want to open, Mr. Emerson [prosecutor].

MR. EMERSON: Fifteen minutes. Counsel for Gonzales neither objected to the time allocated as insufficient, nor requested additional time, nor called the matter to the trial judge's attention in any respect. All counsel proceeded without objection on the basis that each had 15 minutes. There is no error.

■ Even if, as Gonzales claims, he was illegally arrested in the Panama Canal Zone and brought to the United States, this is not grounds for requiring that the trial court release and discharge him without trial. E. g., Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541, 545 (1952) ("This Court has never departed from the rule . . . that the power of a court to

---

3. In this connection, we note that some of Robertson's testimony was inculpatory and some exculpatory.

try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a 'forcible abduction.' "); Stamphill v. Johnston, 136 F.2d 291, 292 (9th Cir.) cert. denied, 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457 (1943) ("The personal presence of a defendant before a District Court gives that court complete jurisdiction over him, regardless of how his presence was secured, whether by premature arrest . . . wrongful seizure beyond the territorial jurisdiction of the court . . . false arrest . . . or extradition arising out of an offense other than the one for which he is being tried."); United States ex rel. Voigt v. Toombs, 67 F.2d 744 (5th Cir. 1933), petition for cert. dismissed, 291 U.S. 686, 54 S.Ct. 442, 78 L.Ed. 1072 (1934) ("It is well settled in the courts of the United States that jurisdiction once acquired in a criminal case is not impaired by the manner in which the accused is brought before the court.").

 Even if all acts done by Gonzales in furtherance of the conspiracy were done in the Republic of Panama, the United States District Court for the Northern District of Texas did not lack jurisdiction over him. A United States court has jurisdiction over violations of narcotics statutes of the sort involved here, whose effectiveness necessarily depends on extraterritorial jurisdiction. E. g., Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927); Marin v. United States, 352 F.2d 174 (5th Cir. 1965); Rocha v. United States, 288 F.2d 545 (9th Cir.), cert. denied, 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241 (1961).

There was nò reversible error in allowing the indictment to be taken into the jury room. This is discretionary with the trial judge. E. g., Bruce v. United States, 351 F.2d 318, 320 (5th Cir. 1965), cert. denied, 384 U.S. 921, 86 S.Ct. 1370, 16 L.Ed.2d 441 (1966).

The trial was completed on April 27. On May 2, defendant Robertson died in his jail cell. Autopsy disclosed the cause to be a pulmonary embolism in an artery leading to the lungs. The medical examiner stated that Robertson may have been or could have been suffering anoxia (lack of oxygen in the blood supply to the brain) for several days before death. This highly speculative information did not require the court to grant a new trial on the gound of newly discovered evidence.

All the other numerous points raised are without merit and require no discussion.

Affirmed.