UNITED STATES of America, Appellee,

v.

**Lawrence V. BROWN, Appellant.**

**No. 76–1681.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 12, 1976.

Decided Feb. 7, 1977.

Certiorari Denied March 28, 1977.
See 97 S.Ct. 1590.

---

James J. Gitomer, Baltimore, Md., for appellant.

Thomas L. Crowe, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty., Andrew Radding, Asst. U. S. Atty., Baltimore, Md., and Howard J. Schulman, Student Intern, University of Baltimore Law School, on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

*Conspiracy* to import heroin—but not the actual importation—from West Germany (the Federal Republic of Germany) into the State of Maryland is the crime of which Lawrence V. Brown was found guilty under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, 952(a), 960 and 963. The primary point he now presses for review and reversal is lack of jurisdiction in the District Court because the malefaction charged in the indictment occurred outside the territorial boundaries of the United States. We find there was jurisdiction.

The facts are these. In 1975, appellant Lawrence V. Brown, a United States Army Sergeant, was stationed at the Army Post Office at Kaiserslautern, Germany. Charles Leonard Fields, similarly ranked and assigned, was Brown's subordinate at the APO. During that spring the Army's Criminal Investigation Division became interested in the activities of James Wilkens,

a civilian restaurateur in Kaiserslautern. CID Agent Hutchinson began an investigation that resulted ultimately in the indictment of Brown and Fields for conspiring with Wilkens to use the Army mails to import heroin into the United States.*

Posing as an underworld drug dealer, Agent Hutchinson arranged a meeting with Wilkens in May 1975 to discuss narcotics trafficking. Although Wilkens could not be induced to buy or sell heroin, he volunteered in a June contact to provide Hutchinson with the means of illegally importing heroin into the United States by use of the Army mails.

■ The evidence was sufficient for the jury to believe that Wilkens had enlisted Brown, and that Brown had subsequently enlisted Fields, to effect this importation; that Brown on two occasions (September 4 and October 17, 1975) received from Wilkens packages supplied by Hutchinson which Wilkens and Brown believed to contain heroin; and that Brown and Fields thereafter caused these packages to enter the United States through Army mail channels. One package—transmitted at Wilkens' suggestion as a trial run—contained a plastic bag of corn starch believed by Wilkens and Brown to be a heroin sample. The second package—that involved in the indictment incident—contained several cannisters of dextrose believed by Wilkens and Brown to be an actual shipment of heroin. These packages were intercepted by agents of the Post Office and the Drug Enforcement Administration when they arrived at a Silver Spring, Maryland Post Office (on or about September 16 and October 31, 1975, respectively) for delivery to a Maryland address.

■ The argument against jurisdiction—the primary question on this appeal—is that no ingredient of the crime of conspiracy was committed within United States territory. But this circumstance does not here immunize Brown from commission of "offenses against the laws of the United States" of which the District Courts are given jurisdiction, 18 U.S.C. § 3231. His counsel frankly concedes that crimes against the United States may be committed despite the foreign locus of the acts, but urges that these offenses are limited to certain categories and that the present offense is not such an instance. After obvious study and application, he suggests that the crimes so recognized are restricted to: (1) the "objective" kind, wherein the acts were intended to produce detrimental effects in the United States, citing *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911), or (2) to the "protective jurisdiction" class of crimes, that is, those which threaten the governmental operations of the nation, citing *United States v. Pizzarusso*, 388 F.2d 8 (2 Cir. 1968). Counsel concludes that the instant perpetration is not so distinctive, for the importation here is merely of corn starch and dextrose, hardly detrimental or threatening.

■ Without approving counsel's classification, or his reading of the decisions he cites, but accepting them arguendo, we think that despite the benign nature of the substances actually imported, the conspiracy alleged implicated a crime that would produce detrimental effects within this nation and affront its denouncement of the possession of and traffic in drugs like those contemplated in this case. The conspiracy, here indicted as extending from about July 1 to November 8, 1975, taught and exampled conduct thwarting this condemnation since such offense was the aim of the conspiracy.

The substantive violation is described in the indictment as the knowing and intentional "import into the State and District of Maryland" from the Federal Republic of Germany (West Germany) of a Schedule I Narcotic Drug Controlled Substance, to wit: Heroin, in violation of Sections 952(a) and 960 of Title 21, United States Code." The conspiracy spells out step by step just how the import was to be schemed and brought to fruition. While its operation touched innocuous articles—corn starch and dext-

---

* Pursuant to a plea agreement, Fields pleaded guilty and consented to testify against Brown in exchange for a recommendation of probation by the prosecution.

rose—this circumstance did not detract from the complete diagramming of how the substantive offense could be perpetrated.

The detriment and hurt to the United States is flatly revealed in the Congressional findings and declarations upon the adoption of this Act, wherein it is said, 21 U.S.C. § 801(2):

"(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and *detrimental* effect on the health and general welfare of the American people." (Accent added.) 21 U.S.C. § 801(2).

That importation was also in the mind of the Congress is again apparent:

"(1) The term 'import', means, with respect to any article, *any* bringing in or introduction of such article into any area . . . ." (Accent added.) 21 U.S.C. § 951(a)(1).

Again, the Congress said:

"It shall be unlawful . . . to import into the United States from *any* place outside thereof . . . any narcotic drug . . . ." (Accent added.) 21 U.S.C. § 952(a).

Severe punishment for offenses against this prohibition is clearly legislated. 21 U.S.C. § 960.

Our interpretation of the appellant's authorities—*Strassheim* and *Pizzarusso*—is not consonant with his counsel's, despite his logic in construing their apposition. As the opinions speak for themselves, we shall not detail them, remarking only that their thrust is to confirm the jurisdiction of the District Court for Maryland.

■ In *United States v. Bowman*, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922), the Court is sharply explicit upon the point. Indeed, it is so comprehensively discussed and so closely fits the case at bar, in facts and in law, that no other citation is needed. The statute there under consideration punished the defrauding of a corporation in which the United States was a stockholder. An indictment for a conspiracy to violate the law was returned, in the District Court for the Southern District of New York, against citizens of the United States who, while aboard a ship at sea near or in a South American port, plotted and executed a plan to defraud the United States. Reversing the trial court for dismissing the indictment for want of jurisdiction, the Chief Justice said:

"But the same rule of interpretation [crimes against private individuals must be committed within the territorial jurisdiction of the government] should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents. Some such offenses can only be committed within the territorial jurisdiction of the Government because of the local acts required to constitute them. Others are such that to limit their *locus* to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home."

The present statutory sanctions against importation of narcotics so precisely match the proscriptions in *Bowman* that further citation would be superfluous.

Other assignments of error are put upon the refusal of a mistrial or new trial for improper use of the accused's silence at trial regarding his activities; the failure to suppress his inculpatory statements made after an illegal arrest; failure of the Court to explore more fully the alleged conversations among the jurors before the submission of the case to them; and denial of a new trial for the prosecution's non-discovery of Jencks Act material. Examination of each of them discloses an absence of merit.

The judgment of conviction will stand.

Affirmed.