**UNITED STATES of America, Appellee,**

v.

**Elio PEREZ–HERRERA, Luis Perez-Herrera and Domingo Perez-Barrio, Appellants.**

No. 78–5775.

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1980.

Rehearing and Rehearing En Banc Denied Feb. 27, 1980.

Miguel Del Aguila, court-appointed, Miami, Fla., for E. Perez-Herrera.

Oscar S. Rodriguez, court-appointed, Gables, Fla., for L. Perez-Herrera.

Emilio De La Cal, court-appointed, Miami, Fla., for D. Perez-Barrio.

Ralph N. Person, Asst. U. S. Atty., Miami, Fla., for appellee.

Before COLEMAN, Chief Judge, KRAVITCH and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

On March 28, 1978, the appellants were arrested aboard an American-registered ship, the *Mey Lin*, approximately seventy miles from the United States. They were subsequently convicted of attempting to import marijuana into the United States in violation of 21 U.S.C.A. § 963.[1]

The appellants contend that they committed no crime, since the indictment did not allege, and the government did not prove, that any part of the attempt was made within the United States. There is no dispute over the relevant facts, the legality of the search of the *Mey Lin*, or the district court's jurisdiction if the acts proved by the government do in fact constitute a crime. The appellants are United States citizens, so the law of nations is not involved. *Skiriotes v. Florida*, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941).

The parties agree that Congress has power to regulate the extra-territorial acts of our citizens. *Skiriotes v. Florida, supra; United States v. Flores*, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933); *Blackmer v. United States*, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *Old Dominion S.S. Co. v. Gilmore (The Hamilton)*, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907); *cf. Church v. Hubbart*, 6 U.S. 187, 234, 2 L.Ed. 249, 264

---

1. 21 U.S.C.A. § 963 provides for the punishment of "[a]ny person who attempts or conspires to commit any offense defined in this subchapter . . . ." 21 U.S.C.A. § 952(a) makes it "unlawful . . . to import into the United States . . . any controlled substance . . . ."

(1804) (in drafting insurance contract, parties must have known that a nation's "power to secure itself from injury [from illegal trade with its colonies] may certainly be exercised beyond the limits of its territory"). However, the scope of legislation is "presumptively territorial." *Sandborg v. McDonald*, 248 U.S. 185, 195, 39 S.Ct. 84, 86, 63 L.Ed. 200, 204 (1918); *New York Central R.R. Co. v. Chisholm*, 268 U.S. 29, 45 S.Ct. 402, 69 L.Ed. 828 (1925); *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1908); *United States v. Pizzarusso*, 388 F.2d 8 (2nd Cir.), *cert. denied*, 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968). Consequently, we are concerned not with the power of Congress to legislate extra-territorially, but with its intent in enacting these statutes.

■ Congress expressly provided that certain acts, such as murder, violate federal law when committed on board ships registered in the United States or owned by American citizens. 18 U.S.C.A. §§ 7 and 1111. But shipboard acts which would be crimes if committed within the territorial United States are not necessarily crimes when committed on the high seas. 18 U.S.C.A. § 7 only defines the special maritime and territorial jurisdiction, and 21 U.S.C.A. §§ 952(a) and 963 do not, by their terms, apply to acts therein.[2] See Ficken, *The 1935 Anti-Smuggling Act Applied to Hovering Narcotics Smugglers Beyond the Contiguous Zone: An Assessment Under International Law*, 29 U.Miami L.Rev. 700, 701 (1975).

Similarly, a penal statute may clearly indicate that it governs extra-territorial conduct. Thus, 21 U.S.C.A. § 959, which forbids the manufacture or distribution of drugs for the purposes of importation, states that it is "intended to reach acts . . committed outside the territorial jurisdiction of the United States." We are mindful that this language in section 959, adopted at the same time as section 952(a), indicates that Congress recognized the need to insure a criminal statute would apply even if all acts were committed outside the United States. However, an attempt to import involves the interests of the United States more directly than does the foreign manufacture of harmful drugs, even manufacture by people who know the drugs will eventually enter the United States.

■ Legislation may state, in so many words, that a penal statute is to have extra-territorial effect, but where the effect of limiting its compass to acts entirely within the United States "would be greatly to curtail the scope and usefulness of the statute," congressional intent to legislate extra-territorially will be inferred. *United States v. Bowman*, 260 U.S. 94, 98, 43 S.Ct. 39, 67 L.Ed. 149, 151 (1922). While this approach was first taken with statutes designed to protect the interests of the United States in its governmental capacity, *Bowman, supra* (conspiracy to defraud the United States government); *Blackmer, supra*, (contempt for failure to respond to subpoena served upon citizen while in a foreign country); *Rocha v. United States*, 288 F.2d 545 (9th Cir.) (making false statements to obtain visas), *cert. denied*, 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241 (1961), such congressional intent may be gleaned from the clear purposes of smuggling statutes. *United States v. Brown*, 549 F.2d 954, 957 (4th Cir.), *cert. denied*, 430 U.S. 949, 97 S.Ct. 1590, 51 L.Ed.2d 798 (1977) (*Bowman* "is sharply explicit upon the point"); *United States v. Vicars*, 467 F.2d 452, 456 (5th Cir. 1972) (dictum, since a co-conspirator had sold cocaine within the country), *cert. denied*, 410 U.S. 967, 93 S.Ct. 1451, 35 L.Ed.2d 702 (1973); *Brulay v. United States*, 383 F.2d 345 (9th Cir.), *cert. denied*, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967); *cf.*

---

**2.** *United States v. Keller*, 451 F.Supp. 631 (D.P. R.1978), involved prosecutions under 21 U.S. C.A. § 963. The court concluded that a foreign-owned vessel can be within the special maritime jurisdiction. While this may be true, the court did not explain how 18 U.S.C.A. § 7 relates to title 21 offenses. As noted above, 18 U.S.C.A. § 7 only defines the maritime and territorial jurisdiction, and it is only important when acts within the special jurisdiction violate substantive law, such as 18 U.S.C.A. §§ 1082 and 1111. In any case, section 7 defines the maritime jurisdiction only for purposes of title 18.

*Skiriotes, supra* (sponge fishing is "directly injurious" to the government of Florida, citing *Bowman* ).

In addition to attempts, section 963 forbids conspiracies to violate the substantive sections of title 21, and an examination of our treatment of conspiracies will help clarify the issue here. We have repeatedly held it is not a defense to a conspiracy charge that the defendant never entered the country, at least so long as an overt act in furtherance of the conspiracy occurred within the United States. *United States v. Postal,* 589 F.2d 862 (5th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979); *United States v. Cadena,* 585 F.2d 1252 (5th Cir. 1978); *United States v. Winter,* 509 F.2d 975 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Rivard v. United States,* 375 F.2d 882 (5th Cir.), *cert. denied,* 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967); *Marin v. United States,* 352 F.2d 174 (5th Cir. 1965). These cases differ in one important respect from this attempt case; in all the conspiracy cases overt acts were committed within the United States, and the conspirators were held accountable for the acts. *Ford v. United States,* 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927), is authority for this approach, which follows from agency principles. This distinction has been observed previously, and in *Yenkichi Ito v. United States,* 64 F.2d 73 (9th Cir.), *cert. denied,* 289 U.S. 762, 53 S.Ct. 796, 77 L.Ed. 1505 (1933) (cited in *Winter, supra* ), the court held that an individual seized outside American territorial waters was not guilty of attempting to bring aliens into the United States.

In *United States v. Winter, supra,* this court affirmed a conviction for conspiracy to import drugs, but in a footnote observed that

> [a] different question might be presented had these foreign nationals been charged with the substantive offense of unlawful importation or attempt to import. In that event, the Court, in the absence of a showing of agency, aider or abettor, etc., would likely have to determine whether Congress intended the statute in issue to have an extraterritorial effect.

509 F.2d at 982–83 n. 24 (citations omitted). We recently avoided this question in *United States v. Sarmiento-Rozo,* 592 F.2d 1318 (5th Cir. 1979), where the deportation of the alien defendants rendered the issue moot.[3]

■ Proceeding to the question of congressional intent, we determine that Congress intended that the prohibition of attempts to import drugs should apply to attempts made wholly outside of our borders. This conclusion follows from statements made in support of the legislation while it was under consideration, as well as from practical considerations related to the operation of the statute.

The Comprehensive Drug Abuse Prevention and Control Act of 1970 (the Act) responded to a problem of "epidemic proportions." H.Rep.No.1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 4566, 4572.[4] In hopes of eliminating all illicit drug traffic, the Act made it unlawful to import controlled substances on board vessels entering or departing the United States. 21 U.S.C.A. §§ 952 and 955. It is also illegal to attempt to do so. 21 U.S.C.A. § 963.

Congress did not address the precise issue before us, but the legislative history of the Act does show an acute awareness of the problems posed by international drug traf-

---

**3.** In *United States v. Williams,* 589 F.2d 210 (5th Cir.), *reh. en banc granted,* 600 F.2d 18 (1979), the court held that in a prosecution for conspiracy to import marijuana "proof of an overt act within the judicial district is not a prerequisite for district court jurisdiction." The point is not clear, but since an overt act in furtherance of the conspiracy had been committed in New York, we read *Williams* as addressing the narrow question of whether an

overt act need have been committed within the particular federal judicial district where the case is tried. In any case, our answer to the question before us is in accord with *Williams,* even if its holding is more expansive then we interpret it to be. *See also* 5th Cir. R. 17.

**4.** Hereinafter cited as "the House Report," with page references to the U.S.Code Cong. & Admin.News only.

ficking, and an intention to do whatever was necessary to end it. The House Report quoted with approval this language from the report of the President's Advisory Commission on Narcotic and Drug Abuse: "[t]he illegal traffic in drugs should be attacked with the full power of the Federal Government. The price for participation should be prohibitive. It should be made too dangerous to be attractive." House Report at 4575. The Act was designed to do just that, and Congress meant to attach criminal sanctions to the importation of any controlled substance without prior approval. House Report at 4638.

The appellants' attempt to import marijuana by ship was a direct injury to the federal government, as opposed to the state governments, in view of the exclusive federal power, and concomitant duties, over foreign trade and the high seas. In *Bowman, supra*, the Court said "[i]t would be going too far to say that because Congress does not fix any locus, it intended to exclude the high seas in respect of this crime. This natural inference from the character of the offense is that the sea would be a probable place for its commission." 260 U.S. at 99, 43 S.Ct. at 41, 67 L.Ed. at 151. *See also Maul v. United States*, 274 U.S. 501, 47 S.Ct. 735, 71 L.Ed. 1171 (1927) (Coast Guard seizure of American vessel beyond the twelve-mile limit.)

In *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 902 (1923), the Supreme Court interpreted the legislative history of the National Prohibition Act as confining prohibition to our territorial waters. While the Court's approach is instructive, we are dealing with an entirely different legislative plan, which, unlike the prohibition laws, deals with commodities outlawed by all nations and considered a fit subject for commerce by none.

Limiting the application of section 963 to attempts committed at least partially in the United States would not eliminate all prosecutions, but, by setting up a free-zone just beyond our territorial waters where smugglers could safely await opportunities to move drugs to the mainland, such a con-struction would substantially impair enforcement activities. We conclude that the realities of drug smuggling are such that Congress must have intended section 963 to apply in the context of this case. *See also United States v. Brown, supra; United States v. Vicars, supra.*

Our decision is supported by the reasoning in *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911), in which the Supreme Court held a person may be guilty of a crime, even though he never entered the prosecuting state, if he intends his acts outside the jurisdiction to produce effects therein, and those consequences do in fact follow. *Accord, United States v. Fernandez*, 496 F.2d 1294 (5th Cir. 1974) (stolen Social Security checks cashed in Mexico). While *Strassheim* concerned power to punish extra-territorial activities, which is undisputed here, its analysis is helpful to our consideration of legislative intent.

The jury concluded that the appellants attempted to bring marijuana into the United States; this attempt had real and significant effects within this country. The legislative history of the Act indicates a real concern on the part of Congress that the illegal importation of narcotics has a "substantial and direct" effect on interstate and foreign commerce. House Report at 4596. Furthermore, the calendar of this court reveals that substantial resources are devoted to regulating the importation of narcotics and other contraband, and every attempt to import illicit drugs further burdens enforcement agencies. In *Church v. Hubbart, supra*, the Court observed that even an attempt to violate the law injures the state. "Any attempt to violate the laws made to protect this right [to a monopoly on colonial trade], is an injury to itself which [the state] may prevent, and it has a right to use the means necessary for its prevention. These means do not appear to be limited within any certain marked boundaries . . . ." 6 U.S. at 235, 2 L.Ed. at 265.

AFFIRMED.