14

was the father of her son Roy, Tr. 24-25, and that Aceto had acknowledged paternity to his sisters, his co-workers, and Ms. Wrenn's family. Tr. 27. Ms. Anita Harvey, a social worker, affirmed that from 1970 to 1973 Ms. Wrenn had consistently referred to Aceto as the father of Roy. Tr. 109. Ms. Wrenn's mother also corroborated Ms. Wrenn's testimony. Tr. 29. Written evidence of acknowledgment came from Aceto's sisters, Adeline Hatch and Ida Robbins. Ms. Hatch, in an affidavit dated June 11, 1975, asserted that Aceto had acknowledged paternity of Roy both during and after Ms. Wrenn's pregnancy. Tr. 99-100. The record also contains several letters from Ms. Hatch to Ms. Wrenn, dating from January 21, 1970 to January 10, 1974, which repeatedly refer to Roy as Aceto's child. Tr. 70-95. Ms. Robbins submitted a letter on January 22, 1979 noting that Aceto had acknowledged paternity to her. Tr. 111. Ms. Robbins also offered a letter from the decedent to her stating that "the baby is alright [sic] and in good health." Tr. 112.

In short, the record is replete with evidence of acknowledgment, and the danger of fraud is minimal. Aceto's expressed concern in his letter to Ms. Robbins over "the baby," while not an explicit acknowledgment of paternity, strongly suggests that Aceto believed he was the father. The letters from his sisters are highly probative of acknowledgment, for the sisters percep- tions were likely arrived at from communi- cations with their brother.[4] Ms. Wrenn's testimony to the same effect must of course be accorded less weight in view of her sub- stantial interest in the litigation. But her version of the facts has remained the same since 1970. The consistency of Ms. Wrenn's story, together with its corrobora- tion by others who are disinterested, are relevant factors to weigh in assessing her credibility.

Under the circumstances of this case, therefore, this court holds that Massa- chusetts intestacy law should permit Roy Wrenn to inherit as an acknowledged il- legitimate son.[5] He is therefore a child of a deceased wage-earner under 42 U.S.C. § 416(h)(2)(A) and is entitled to Surviving

Child's Benefits. Plaintiff's motion for sum- mary judgment is allowed.

An order will issue.

Tauro, D.J.

## U.S.A.
### vs.
### Albert J. GREEN
### Alfred D. KINCAID
### Kelly S. TWOMEY

### Crim. No. 80-274-S

### United States District Court, D. Massachusetts

### December 12, 1980

[4]Ms. Robbins' letter of January 21, 1970 to Ms. Wrenn demonstrates that the two had never met before Ms. Robbins found out about the child:

I am John's sister Ida you haven't heard from me before. I just got a letter from John, he is very concerned for the baby over the German Sheperd dog you have. He asked me to write to you.

Tr. 71

[5]To the extent that the Administrative Law Judge's conclusion that Aceto never "acknowledged" patern- ity represents a finding of no oral acknowledgment, this court rejects it as lacking substantial evidence. See 42 U.S.C. § 405(g); note 3 supra.

Judd for the plaintiff.
Ronald Chisholm for the defendant.

## MEMORANDUM AND ORDER

**SKINNER, D.J.**

Defendants Albert J. Green, Alfred D. Kincaid and Kelly S. Twomey have been indicted on three counts of having violated the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq. The case is presently before me on defendants' motion to dismiss for lack of subject matter jurisdiction over the alleged offenses.

The facts are straightforward. On August 11, 1980, the United States Coast Guard Cutter RELIANCE encountered the yacht PERSISTANCE, sailing under British registry, approximately 55 miles east of Provincetown, on the high seas. A boarding party from RELIANCE conducted a search of PERSISTANCE and discovered approximately 5 tons of marijuana on board. The Coast Guard seized the vessel, brought it to Boston Harbor and arrested its crew, Green, Kincaid and Twomey, all United States citizens.

Count I charges defendants with conspiracy to import marijuana into the United States in violation of 21 U.S.C. § § 952(a) and 963. Count II charges them with conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § § 841 (a)(1) and 846. Count III charges defendants with possession with intent to distribute marijuana in violation of 21 U.S.C.

§ 841(a)(1).

The indictment does not allege that any aspects of these offenses took place in United States territory. Defendants acknowledge that Congress has the authority under the Constitution and recognized principles of international law to punish conduct by United States citizens on the high seas. They argue, however, that the provisions of the Drug Abuse Prevention and Control Act of 1970 [1970 Act] under which they have been charged were not intended by Congress to reach extraterritorial conduct. They urge this court to dismiss the indictment for lack of subject matter jurisdiction over the alleged offenses.

Where Congress has not indicated any intent to apply a law extraterritorially, a court should normally construe the law not to apply to extraterritorial acts. **Foley Brothers, Inc. v. Filardo,** 336 U.S. 281, 285 (1949). There is an exception, however, to this canon of construction. In **United States v. Bowman,** 260 U.S. 94, 98 (1922), the Supreme Court stated:

> But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers or agents. Some such offenses can only be committed within the territorial jurisdiction of the Government because of the local acts required to constitute them. Others are such that to limit their **locus** to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the **locus** shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

Thus, even absent an express intention by Congress to apply a statute extraterritorially, "the exercise of that power may be inferred from the nature of the offenses and Congress' other legislative efforts to eliminate the type of crime involved." **United States v. Baker,** 609 F.2d 134, 136 (5th Cir. 1980).

The application of these principles to each of the counts is the problem presented by this case.

## A. COUNT I: CONSPIRACY TO IMPORT MARIJUANA IN VIOLATION OF 21 U.S.C. § 952(a) AND 963

The importation of controlled substances if prohibited by 21 U.S.C. § 952(a). Section 952(a) provides that "It shall be unlawful . . . to import into the United States from any place outside thereof, any controlled substance . . ." Conspiracy to import controlled substances is prohibited by 21 U.S.C. § 963, which states:

> Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Contrary to defendants' assertion, no overt act in furtherance of the conspiracy need be proved in order to convict under 21 U.S.C. § 963. **United States v. Thomas,** 567 F.2d 638, 641 (5th Cir.), **cert. denied,** 439 U.S. 822 (1978).

The smuggling of controlled substances into the United States ordinarily encompasses illegal combinations that take place on the high seas and in foreign nations, and it was clearly the intention of Congress to apply criminal sanctions thereto. **United States v. Brown,** 549 F.2d 954 (4th Cir.), **cert. denied,** 430 U.S. 949 (1977).

Accordingly, defendants' motion to dismiss Count I for lack of subject matter jurisdiction is DENIED.

## B. COUNT III: POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA IN VIOLATION OF 21

U.S.C. § 841(a)(1)[1]

Defendants argue that at the time they allegedly possessed marijuana, i.e., August 5-11, 1980, possession on the high seas with the intent to distribute marijuana was not an offense against the United States. They contend that Congress did not prohibit extraterritorial possession of controlled substances with the intent to distribute until September 15, 1980 when it enacted H.R. 2538, now "Act of September 15, 1980", P.L. No. 96-350, an amendment to the 1970 Act. They further assert that to construe 21 U.S.C. § 841(a)(1) as applying to extraterritorial conduct would render meaningless another provision of the 1970 Act, 21 U.S.C. § 959.

The government argues that Congress intended to give extraterritorial application to § 841(a)(1). It relies principally upon two recent decisions, **United States v. Baker, supra,** and **United States v. Arra,** F.2d (1st Cir. August 21, 1980).

21 U.S.C. § 841 provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally —

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 846 states:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

The Fifth Circuit's decision in **Baker,** though not controlling, is directly on point. There, the United States Coast Guard boarded a shrimp vessel nine miles off the coast of Florida and found 51,280 pounds of marijuana in the possession of the defendant Baker. Baker was subsequently convicted of possession with intent to distribute marijuana under 21 U.S.C. § 841 (a)(1) and conspiracy to do so under 21 U.S.C. § 846. On appeal, the issue was whether § 841(a)(1) and § 846 reach beyond the three-mile limit of the territorial sea into the high seas.[2]

Acknowledging that § 841(a)(1) and 846 are silent as to their extraterritorial application, the Court nevertheless concluded that Congress intended these statutes to reach extraterritorial acts of possession. The Court relied principally upon **United States v. Bowman, supra,** to infer this congressional intent, reasoning that to limit the locus of these statutes to strictly territorial jurisdiction would greatly curtail their scope and usefulness:

These two statutes are part of a comprehensive legislative scheme designed to halt drug abuse in the United States by exercising effective control over its various domestic and foreign sources of illegal drugs . . . The power to control efforts to introduce illicit drugs into the United States from the high seas is a necessary incident to Congress' efforts to eradicate all illegal drug trafficking. 609 F.2d at 137.

The Court examined other provisions of the 1970 Act found that they supported its conclusion. In the Court's view, 21 U.S.C. § 801, which contains congressional findings, demonstrates that Congress intended that the 1970 Act have a broad sweep in dealing with all aspects of drug abuse. The Court also noted that other provisions of the 1970 Act, e.g., 21 U.S.C. § 959 (prohibiting the manufacture or distribution of a controlled substance outside the United States with the intent that it be imported into the United States) and 21 U.S.C. §§ 952 and 963, explicitly apply to acts occurring wholly outside the territorial United States.

The **Baker** opinion was cited without extended discussion by the Court of Appeals

---

[1] Because my ruling on Count III affects any consideration of Count II of the indictment, I will consider Count III first.

[2] The government conceded that the area between three and twelve miles from the coast, i.e., the "contiguous zone", is part of the high seas for purposes of criminal jurisdiction. 609 F.2d at 136.

in United States v. Arra, supra. In Arra, defendants were convicted of conspiracy to import 13,303 pounds of marijuana into the United States, possession with the intent to distribute marijuana in the United States, and attempted importation of the marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 963. The Coast Guard discovered the illegal substance during an inspection of the vessel approximately 35 miles north of Puerto Rico on January 5, 1978. Defendants argued on appeal that because the alleged crimes were not committed within the special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. § 7, the district court had no jurisdiction. The Court of Appeals disagreed, holding that 18 U.S.C. § 7 was inapplicable to the case because offenses under 21 U.S.C. § 800 et seq. need not occur within the United State's special maritime and territorial jurisdiction. The Court stated:

A sovereign may exercise jurisdiction over acts done outside its geographical jurisdiction which are intended to produce detrimental effects within it. We therefore conclude the district court had jurisdiction. See United States v. Baker . . . Slip Op. at 7.

The Court did not directly address the issue posed here and in Baker, i.e., whether § 841(a)(1) applies to extraterritorial acts of possession. Nevertheless, in upholding the defendants' convictions under § 841(a)(1) for possession of marijuana 35 miles off the coast of Puerto Rico, the Court implicitly concluded that Congress intended § 841(a)(1) to apply extraterritorially.

Both Baker and Arra were decided, however, before Congress enacted H.R. 2538, now P.L. 96-350, on September 15, 1980. P.L. 96-350 is an effort by Congress to augment the 1970 Act. One of the deficiencies that Congress perceived in the 1970 Act was that § 841(a)(1) did not prohibit possession of controlled substances on the high seas. The Senate Report accompanying H.R. 2538, S. Rep. No. 96-855, 96th Cong., 2d. Sess. (1980) 1, 2, reprinted in [1980] U.S. Code Cong. & Admin. news 5213, 5213-14, states:

According to the Coast Guard, most of its difficulties in drug enforcement stem from this statutory void which does not proscribe possession of controlled substances on the high seas, while such conduct is a crime in U.S. territory. If the Government seeks to prosecute offenders apprehended on the high seas, it now must do so for either attempted unlawful importation of these substances or conspiracy to do so. In most cases, evidence to prove importation or conspiracy beyond a reasonable doubt is impossible to obtain. Thus, in most cases the Coast Guard is able to seize and confiscate the ship and the illegal drugs, but the Government is not able to prosecute the crew or others involved in the smuggling operation.

The House Report. H. Rep. No. 96-327, 96th Cong. 1st Sess. (1979) 4, 5, traced the history of this oversight:

In the First Session of the 77th Congress, this Committee reported H.R. 4258, a bill to prohibit the use of narcotics on board U.S. vessels on the high seas. Codified as 21 U.S.C. 184 (a) (55 Stat. 584), the statute remained in effect until 1970, when it was inadvertently repealed by the Comprehensive Drug Abuse Prevention and Control Act (Public Law 91-191 [84 Stat. 1236]), hereinafter referred to as the "Comprehensive Act". This oversight created a statutory void, resulting in an anomaly in the criminal law whereby possession of narcotics and dangerous drugs on U.S. territory and within the territorial sea is a Federal crime, while the same conduct on the high seas is not prohibited under existing law. The consequences have been that, since 1970, drug traffickers have operated with impunity on the high seas beyond the reach of U.S. law but not U.S. jurisdiction.

Beginning in September of 1974, Federal authorities reported the dismissal of cases in Federal courts in instances where the Coast Guard had apprehended U.S. registered vessels on the high seas for possession of narcotics. The only prosecutable offense in many cases was conspiracy to

import, a very difficult crime to prove.

Four provisions of the new law, P.L. 96-350, expressly prohibit extraterritorial possession of controlled substances:

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That (a) it is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

(b) It is unlawful for a citizen of the United States on board any vessel to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

(c) It is unlawful for any person on board any vessel within the customs waters of the United States to knowingly or intentionally manufacture or distribute or to possess with intent to manufacture or distribute, a controlled substance.

(d) It is unlawful for any person to possess, manufacture, or distribute a controlled substance —

(1) intending that it be unlawfully imported into the United States; or
(2) knowing that it will be unlawfully imported into the United States.

(h) This section is intended to reach acts of possession, manufacture, or distribution committed outside the territorial jurisdiction of the United States.

It is evident from the legislative history of P.L. 96-350 that Congress did not believe, at the time it enacted H.R. 2538 on September 15, 1980, that 21 U.S.C. § 841 (a)(1) prohibited extraterritorial possession of narcotics. This legislative declaration although not controlling is entitled to significant weight. **National Labor Relations Board v. Bell Aerospace Co.,** 416 U.S. 267, 275 (1974).

The conclusion reached by Congress is supported, moreover, by examination of other provisions of the 1970 Act. For example, § 1079, now 21 U.S.C. § 959, which prohibits manufacturing or distributing a controlled substance with the intent or knowledge that it will be unlawfully imported into the country provides: "This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States." It is at least a permissible inference that if Congress intended to reach extraterritorial possession of controlled substances, it would have included the offense of possession in § 959 or drafted § 841(a)(1) to contain a clause similar to that in § 959.

Furthermore, to accord 21 U.S.C. § 841 (a)(1) extraterritorial application would render 21 U.S.C. § 959 redundant. In addition to possession with intent to distribute, § 841(a)(1) prohibits the acts of manufacturing, distributing, and dispensing controlled substances. Under the interpretation the government urges, § 841(a)(1) would reach acts of manufacturing, distributing and dispensing controlled substances outside the country. Extraterritorial manufacturing and distributing are already prohibited by 21 U.S.C. § 959. Section 959 provides:

It shall be unlawful for any person to manufacture or distribute a controlled substance in schedule I or II —

(1) intending that such substance will be unlawfully imported into the United States; or
(2) knowing that such substance will be unlawfully imported into the United States.

This section is intended to reach acts of manufacture of distribution committed outside the territorial jurisdiction of the United States.

If § 841(a)(1) were interpreted to apply extraterritorially, § 959 would merely be a narrow restatement of the prohibitions contained in § 841(a)(1).

It is a well-settled canon of construction that courts must interpret the acts of Congress so as to give effect to all their provisions and to avoid redundancies. **Rosado v. Wyman,** 397 U.S. 397, 415 (1970); **United States v. Turkette,** F.2d (1st Cir. Sept. 23, 1980). If this canon is applied

to § 841(a)(1) the section must be construed to apply to territorial acts only in order to give appropriate effect to § 959.

Ordinarily, the decision of our Court of Appeals in **United States v. Arra, supra,** would be binding on me. There are two considerations, however, which warrant an independent re-examination of the issue. The first is the intervening passage of P.L. 96-350 and the publication of its attendant legislative reports, which were not available to the Court of Appeals. The second is that the Court in **Arra** was principally engaged in resolving the validity of a search and seizure, and passed on the substantive jurisdiction of the offense of possession only incidentally, without extended discussion. The Court has indicated in the past that we should distinguish between such incidental expressions of opinion and more fully developed decisions in assigning precedential weight. The preoccupation of the Court with very difficult search and seizure issues and its resolution of the substantive issue by uncritical reliance on **United States v. Baker, supra,** suggests that the latter was not fully considered, and should be re-examined, particularly in the light of intervening legislation.

**United States v. Baker, supra,** was similarly decided before the recent enactment of P.L. 96-350. The Court of Appeals for the Fifth Circuit held that possession of marijuana with intent to distribute it in the United States was the functional equivalent of a conspiracy to import the marijuana into the United States.

In my opinion, the Court's opinion in **United States v. Baker, supra,** is not sufficiently persuasive to overcome the effect of the recent legislative interpretation of § 841(a) and the internal structure of the 1970 Act viewed as a whole as described above.

Accordingly, defendants' motion to dismiss Count III of the indictment is ALLOWED.

C. COUNT II: CONSPIRACY TO POSSESS WITH THE INTENT TO DISTRIBUTE MARIJUANA IN VIOLATION OF 21 U.S.C. § § 841 (a)(1) AND 846

If I am correct that § 841(a) has no extraterritorial effect, then a conspiracy to violate § 841(a) can only be a conspiracy to commit a crime within the United States. A conclusion that Congress intended the prohibition against such conspiracies to have extraterritorial effect is warranted on the basis of principles already fully discussed with reference to Counts I and III.

The motion to dismiss Count II for lack of subject matter jurisdiction is accordingly DENIED.

Walter Jay Skinner, D.J.